# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| HOSPIRA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 12 C 8544 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| THERABEL PHARMA N.V., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Hospira, Inc. ("Hospira") brings this cause of action against Therabel Pharma N.V. ("Therabel"), praying that the Court grant it declaratory and injunctive relief. On September 7, 2012, Therabel filed a Request for Arbitration with the International Chamber of Commerce ("ICC") in Geneva, Switzerland, in which it named Hospira and its wholly owned subsidiary, Javelin Pharmaceuticals, Inc. ("Javelin"),[1] as Respondents. This suit immediately followed that Request for Arbitration.

Hospira seeks a declaration from this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* and Rule 57 of the Federal Rules of Civil Procedure, that it has no agreement to arbitrate with Therabel and is consequently not bound to arbitrate any claims. Hospira also prays that this Court grant it preliminary and permanent injunctive relief and enjoin Therabel from proceeding with the ICC Arbitration against Hospira. Presently before the Court is Hospira's motion for a preliminary injunction. (R. 7, Pl.'s Mot.) For the reasons discussed below, the Court grants Hospira's motion and enters the declaratory and injunctive relief it seeks.

---

[1] As explained below, Javelin became a wholly-owned subsidiary of Hospira in July 2010. (R. 1, Compl. ¶¶ 18, 20; R. 1, Compl., Ex A, Tab 3, Merger Agreement.)

**RELEVANT FACTS**

Hospira is a Delaware corporation with its principal place of business in Lake Forest, Illinois. (R. 1, Compl. ¶ 6.) Hospira is a specialty pharmaceutical and medication delivery company that develops, markets, and manufactures products which help improve the productivity, safety, and efficacy of patient care. (*Id.*) Therabel is a corporation organized and existing under the laws of the Netherlands with its principal place of business in the Netherlands. (*Id.* ¶ 7.) Therabel is also a specialty pharmaceutical company. (*Id.*)

Javelin, originally headquartered in Cambridge, Massachusetts, is a small specialty pharmaceutical company that develops new products and improves formulations of existing drugs that target unmet and underserved medical needs primarily in the pain management market. (*Id.* ¶ 11.) In 2005, Javelin was incorporated in and under the laws of the State of Delaware, and in 2006, its common stock was listed on what was then the American Stock Exchange. (*Id.*)

One of the drugs that Javelin develops is Dyloject, which is a nonsteroidal anti-inflammatory drug ("NSAID"). (*Id.* ¶ 12.) In October 2007, Javelin received the Medicines and Healthcare Products Regulatory Agency's ("MHRA")[2] approval to begin selling Dyloject in the United Kingdom ("U.K."). (*Id.* ¶ 13.) Having received the MHRA's approval, Javelin began selling Dyloject in the U.K. in December 2007. (*Id.*) At the same time, Javelin was working to gain approval to sell Dyloject in the United States. (*Id.*)

On January 15, 2009, Therabel entered into an agreement with Javelin in which it acquired Javelin's U.K. subsidiary, Javelin Pharmaceuticals U.K. Ltd ("Javelin U.K."), and the

---

[2]   The MHRA is the regulatory body responsible for regulating the sale of medicines and medical devices in the U.K., much as the Food and Drug Administration ("FDA") does in the United States.

exclusive European rights to commercialize Dyloject. (*Id.* ¶ 14; R. 1, Ex. A, Tab 1, License & Commercialization Agreement; R. 1, Ex. A, Tab 4, Agreement for Sale & Purchase of Whole Issued Share of Capital Javelin Pharmaceuticals U.K. Ltd.) Pursuant to the License and Commercialization Agreement ("License Agreement") by and between Therabel and Javelin, Therabel assumed from Javelin all Dyloject commercialization, regulatory and manufacturing responsibilities, and expenses in the U.K., along with those for future markets approved within the European Union and certain other countries outside of the United States. (R. 1, Compl. ¶ 15; R. 1, Ex. A, Tab 1, License Agreement § 2.1.) In return, Therabel agreed to pay Javelin $7 million upfront and $5 million for existing inventory. (R. 1, Compl. ¶ 15; R. 1, Ex. A, Tab 1, License Agreement § 5.) The License Agreement further provided for additional payments of up to $59.5 million if certain sales milestones were met, plus a potential royalty on future net sales of Dyloject for a specified period. (R. 1, Compl. ¶ 15; R. 1, Ex. A, Tab 1, License Agreement § 5.)

The License Agreement is signed by Therabel and Javelin, ((R. 1, Compl. ¶ 16; R. 1, Ex. A, Tab 1, License Agreement at 49), and is not signed by Hospira. The License Agreement expressly provides that it is "for the sole benefit of [Javelin and Therabel] and their successors and permitted assigns, and [it] shall not be construed as conferring any rights in any other persons except as otherwise expressly provided in this Agreement." (R. 1, Ex. A, Tab 1, License Agreement § 11.9.) In addition, the License Agreement contains a "Governing Law and Arbitration Clause" ("Arbitration Clause"), that provides, in relevant part:

> The interpretation and construction of this Agreement shall be governed by the laws of The State of New York, excluding any conflicts or choice of law rule or principle that might otherwise refer construction or interpretation of this Agreement to the substantive law of another jurisdiction. Any and all disputes arising out of or in connection with this Agreement . . . shall be resolved and settled through negotiation between [Javelin and Therabel]. To that effect, either

[Javelin or Therabel] shall serve a written notice upon the other (a "Dispute Notice") proposing that [Javelin or Therabel] seek to resolve the dispute by negotiation. If a dispute is not resolved within thirty (30) days of the receipt of the Dispute Notice, such dispute shall, at the request of either [Javelin or Therabel], be settled in accordance with the ICC rules of arbitration by three arbitrators appointed in accordance with those rules.

(*Id.* § 11.1). Thus, the Arbitration Clause binds Javelin and Therabel to arbitrate any dispute between them arising out of the License Agreement. The interpretation and construction of the License Agreement is governed by the laws of the State of New York. (*Id.*)

In April 2010, Hospira announced a tender offer in which its wholly owned subsidiary, Discus Acquisition Corporation ("Discus"), would purchase all outstanding shares of Javelin's common stock. (R. 1, Compl. ¶ 18.) The closing of the acquisition was delayed, however, when Javelin discovered that particulate had been found in some vials of Dyloject. (*Id.*) In May 2010, while the parties were still contemplating the tender offer, Therabel announced that it was withdrawing all batches of Dyloject from the U.K. market due to the particulate issue. (*Id.* ¶ 19.) To date, Therabel has yet to reintroduce Dyloject in the U.K. (*Id.*) On April 26, 2012, Therabel U.K. filed a renewal submission with the MHRA to maintain its marketing authorization for Dyloject. (*Id.*) Ultimately, in July 2010, the tender offer was completed. (*Id.* ¶ 20.)

Javelin and Discus were merged pursuant to an Agreement and Plan of Merger ("Merger Agreement") by and among Hospira, Discus, and Javelin. (*Id.*; R. 1, Ex. A, Tab 3, Merger Agreement.) The Merger Agreement expressly provides that Javelin would assume all of the "debts, liabilities and duties" of Javelin and Discus. (R. 1, Ex. A, Tab 3, Merger Agreement § 3.01.) Specifically, Section 3.01 of the Merger Agreement provides, in pertinent part:

[A]t the Merger Effective Time, [Discus] shall be merged with and into the [Javelin] in accordance with the [General Corporation Law of the State of Delaware] and the separate corporate existence of [Discus] shall thereupon cease. [Javelin] shall be the surviving corporation in the Merger (sometimes referred to as the "Surviving Corporation"), and the separate corporate existence of the

4

> Company [Javelin] with all its rights, privileges, immunities, powers and
> franchises shall continue unaffected by the Merger. At the Merger Effective Time,
> the effect of the Merger shall be as provided in the Agreement . . . . Without
> limiting the generality of the foregoing, and subject thereto, at the Merger
> Effective Time, all of the property, rights, privileges, powers and franchises of
> [Javelin] and [Discus] shall vest in the Surviving Corporation, and all debts,
> liabilities and duties of [Javelin] and [Discus] shall become the debts, liabilities
> and duties of the Surviving Corporation.

(*Id.*) Thus, through this section and a separate governing law section, the Merger Agreement is

explicitly governed by the laws of the State of Delaware. (*Id.* at §§ 3.01, 11.08(a); R. 1, Compl.

¶ 21.)

Since the merger of Discus and Javelin, Javelin has remained a wholly owned subsidiary

of Hospira. (R. 1, Compl. ¶ 22.) Javelin has its own offices and directors, its own bylaws, and a

Certificate of Incorporation. (*Id.*) While Hospira files consolidated tax returns, it lists Javelin as

a separate company on those returns. (*Id.*) Hospira alleges that it has not derived any benefit—

pecuniary or otherwise—from the License Agreement. (*Id.* ¶ 23.) Since the merger of Discus

and Javelin, neither Javelin nor Hospira has received any royalties or other payment from

Therabel in connection with the License Agreement. (*Id.* ¶ 24.) Therabel has shared the results

of some of its Dyloject testing with Javelin and Hospira, but the results of those tests have been

inconclusive and therefore of no benefit in terms of gaining approval for the commercialization

of Dyloject in the United States. (*Id.* ¶ 25.)

On September 7, 2012, Therabel filed a Request for Arbitration with the ICC. (*Id.* ¶ 26.)

The essence of Therabel's claim is that Javelin defrauded it in late 2008 and early 2009 by

allegedly failing to disclose a precipitate issue with Dyloject that arose in December 2007, but

which was remedied in February 2008.[3] (*Id.*) Hospira alleges that although the 2008 precipitate issue is not related to the 2010 particulate issue, Therabel has nevertheless claimed in its Request for Arbitration that it would not have agreed to acquire Javelin U.K. and the European rights for Dyloject in 2009 had it known about the 2008 precipitate issue. (*Id.*)

Hospira claims that neither it nor Discus had anything to do with the alleged fraud, as it occurred well before Discus agreed to acquire Javelin. (*Id.* ¶ 27.) Hospira further alleges that it had no connection to Javelin at the time that Javelin entered into the License Agreement with Therabel in January 2009, at the time that Javelin commenced performance under the License Agreement, or at any time prior to the consummation of Discus's tender offer for Javelin in July 2010. (*Id.*) Therabel seeks to hold both Javelin and Hospira responsible for Javelin's alleged fraud. (*Id.* ¶ 28.) Therabel's Request for Arbitration seeks damages of at least $19 million. (*Id.* ¶ 29.)

## PROCEDURAL HISTORY

Hospira commenced this action by filing a verified complaint against Therabel with this Court on October 24, 2012. (R. 1, Compl.) Hospira seeks a declaratory judgment pursuant to the Declaratory Judgment Act and Rule 57 of the Federal Rule of Civil Procedure holding that it has no agreement to arbitrate with Therabel and is therefore not bound to arbitrate with Therabel before the ICC. (*Id.* ¶ 35A.) Hospira also prays for preliminary and permanent injunctive relief barring Therabel from forcing Hospira into arbitration proceedings before the ICC. (*Id.* ¶ 35B.)

On October 24, 2012, Hospira moved for a preliminary injunction enjoining Therabel from pursuing arbitration proceedings brought against Hospira before the ICC. (R. 7, Pl.'s Mot.)

---

[3] Hospira does not allege in its complaint that there was a precipitate issue that arose in 2007, nor does it allege any facts in connection with a precipitate issue in 2007, nor any claims regarding a fraud in late 2008 or early 2009.

Hospira argues that the arbitration should be enjoined because it is not a party to any arbitration agreement with Therabel and it has not "clearly and unmistakably" agreed to arbitrate any claims. (R. 8, Pl.'s Mem. at 6-7) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986)). On October 31, 2012, the Court consolidated Hospira's request for a preliminary and permanent injunction into one hearing. (R. 14, Min. Entry.) Thereafter, the parties informed that Court that "because the remaining issues to be decided were akin to a motion for summary judgment, a hearing would not be necessary." (R. 42, Pl.'s Reply at 1 n.1; *see also* R. 30, Min. Entry; R. 53, Status Hr'g Tr. 5, 11, Dec. 6, 2012.) The Court subsequently vacated the hearing for injunctive relief, (R. 51, Min. Entry), and at a later status hearing informed the parties that because the injunctive relief issues were purely legal in nature, a hearing was not necessary, (*see* R. 57, Min. Entry). Neither party objected. (*See id.*)

On November 30, 2012, Therabel filed a motion to dismiss Hospira's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (R. 21, Def.'s Mot.) On June 11, 2013, the Court denied Therabel's motion to dismiss and ruled that it does have personal jurisdiction over Therabel consistent with the requirements of due process of law such that the maintenance of this suit against Therabel in the State of Illinois is not constitutionally suspect. (R. 59, Order.) The Court held that Therabel has "sufficient minimum contacts" with the State of Illinois such that haling Therabel into court in Illinois "does not offend traditional notions of fair play and substantial justice." (*Id.*) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). The only remaining issues are whether Hospira is entitled to a declaratory judgment and injunctive relief.

Hospira argues that it cannot be compelled to arbitrate with Therabel because it is not a signatory to the License Agreement giving rise to the arbitration before the ICC. (R. 8, Pl.'s

Mem. at 6-9.) Hospira asserts that the present situation does not fall into any of the five circumstances in which courts have decided that a non-signatory may be bound to an arbitration agreement. (*Id.* at 9-14.) Finally, Hospira argues that it is likely to succeed on the merits of its claim for a declaratory judgment and that it meets the remaining elements for injunctive relief. (*Id.* at 7-9, 14-15.)

On November 30, 2012, Therabel responded to Hospira's motion for injunctive relief. (R. 24, Def.'s Resp.) Therabel argues that Hospira will not succeed on the merits of its claim for a declaratory judgment, thus precluding this Court from granting Hospira equitable relief. (*Id.* at 5.) This obtains, Therabel argues, because Hospira is bound to the arbitration provision embedded within the License Agreement pursuant to two of the five circumstances in which a non-signatory may be bound to an arbitration agreement. (*Id.* at 6-12.) Therabel argues that Hospira is bound by the doctrine of assumption, as well as by the doctrine of equitable estoppel. (*Id.* at 6-12.) In a footnote to its brief in response to Hospira's motion, Therabel states that although the Court might find that Hospira is bound to arbitrate pursuant to veil-piercing or alter ego theories—two more of the five circumstances in which a non-signatory may be bound to an arbitration agreement—it has decided not to proceed on those theories, and relies solely on the doctrines of assumption and equitable estoppel. (*Id.* at 5 n.6.) Furthermore, Therabel claims that Hospira has not, and will not, suffer irreparable harm, and that any harm to Hospira is outweighed by the irreparable harm that Therabel would suffer if the Court were to grant Hospira's motion for injunctive relief. (*Id.* at 12-13.) Therabel also argues that an injunction will harm the public interest, and that a balancing of the equities weighs against granting Hospira's request for equitable relief. (*Id.* at 13-15.)

On January 11, 2013, Hospira replied in support of its motion for an injunction. (R. 42, Pl.'s Reply.) Hospira argues that it did not assume the obligation to arbitrate Therabel's dispute with Javelin because, Hospira claims, a non-signatory can only be bound under a theory of assumption where the non-signatory specifically consents to assume the obligation to arbitrate. (*Id.* at 2-3, 5-8.) Hospira also argues that it cannot be estopped from denying an agreement to arbitrate. (*Id.* at 3, 8-11.) Finally, Hospira claims that Therabel's arguments regarding the elements for injunctive relief are unavailing and should be rejected by this Court and that the Court should enter an injunction in Hospira's favor. (*Id.* at 14-15.)

On June 14, 2013, in response to the Court's request that both parties could submit papers on the Supreme Court's recent decision in *Oxford Health Plans LLC v. Sutter*, 569 U.S. ___, 133 S. Ct. 2064 (2013), Hospira filed a "Response to the United States Supreme Court's Decision in *Oxford Health Plans*." (R. 60, Pl.'s Resp. at 1-5.) Hospira argues that *Oxford Health Plans*, 569 U.S. __, 133 S.Ct. 2064, confirms that the Court, rather than ICC arbitrators, should decide the gateway issue of whether Hospira agreed to arbitrate. (R. 60, Pl.'s Resp. at 1-5.)

## ANALYSIS

I. **Whether the Court has subject-matter jurisdiction over Hospira's action for a declaratory judgment**

A. **Federal-question jurisdiction**

As a threshold matter, and although neither party has raised the issue, the Court has a duty to independently satisfy itself that it has subject-matter jurisdiction over the instant dispute. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (The question of the court's subject-matter jurisdiction is one "the court is bound to ask and answer for itself, even when not otherwise suggested . . . The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and

without exception.") (internal quotation marks omitted) (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900); *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)); *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 878 (7th Cir. 2002) ("Before entertaining any claim, a federal district court must assure itself that it has jurisdiction to hear the matter presented to it."). "Jurisdiction is authority to decide the case either way." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) (Holmes, J.).

The Declaratory Judgment Act, 28 U.S.C. § 2201, allows a party like Hospira, who expects to eventually be sued, to determine its rights and liabilities without waiting for its adversary, the presumptive plaintiff (Therabel), to bring suit. *DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009) (citing *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952); *Ceres Terminals, Inc. v. Indus. Comm'n of Ill.*, 53 F.3d 183, 185 (7th Cir. 1995)). The Declaratory Judgment Act does not supply the Court with independent subject-matter jurisdiction. *Samuel C. Johnson 1988 Trust v. Bayfield Cnty.*, 520 F.3d 822, 827-28 (7th Cir. 2008) (citing *Wis. v. Ho-Chunk Nation*, 512 F.3d 921, 935 (7th Cir.2008)); *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995) (citing *Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1387 (7th Cir. 1992)). Instead, jurisdiction is determined by whether federal-question jurisdiction would exist over the *anticipated claims* that have raised the need for a declaratory judgment action. *DeBartolo*, 569 F.3d at 741; *Samuel C. Johnson 1988 Trust*, 520 F.3d at 828 (citing *Ho-Chunk Nation*, 512 F.3d at 935.)

Hospira contends that the Court has subject-matter jurisdiction over this action for a declaratory judgment subject to the Court's grant of federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because this action is brought under Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-209, which applies the Convention on the Recognition and

Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"). (R. 1, Compl. ¶ 9.) When claims "aris[e] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, district courts possess federal-question jurisdiction. *See Mims v. Arrow Fin. Servs., LLC*, ___ U.S. ___, 132 S.Ct. 740, 748-49 (2012) ("when federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under [28 U.S.C.] § 1331.") Federal-question jurisdiction "has long been governed by the well-pleaded-complaint rule, which provides that 'federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 12 (2003) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Thus, the Court must address whether Therabel's presumed complaint against Hospira, "on its face, would include an action 'arising under' federal law." *Samuel C. Johnson 1988 Trust*, 520 F.3d at 828 (citing *Caterpillar*, 482 U.S. at 392; 28 U.S.C. § 1331).

### 1. The New York Convention and Chapter 2 of the FAA

In its complaint, Hospira alleges that the Court has federal-question jurisdiction because its action is brought under Chapter 2 of the FAA, 9 U.S.C. §§ 201-208, which applies the New York Convention. (R. 1, Compl. ¶ 9.) The New York Convention is a multilateral treaty that has been ratified by over 80 countries, including the United States. *See* 31 Am. Jur. Proof of Facts 3d 495 (Originally published in 1995); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 18 n.1 (2d Cir. 1997). The New York Convention deals primarily with the enforcement of foreign arbitration awards, and authorizes the enforcement of a foreign arbitration award "in the courts of any country which is a party to the [New York] Convention, subject to review only on procedural grounds dealing with questions of fairness in obtaining the award, nonarbitrability,

and public policy." 31 Am. Jur. Proof of Facts 3d 495 (Originally published in 1995). To enforce a foreign arbitration award in the United States, "a party need only furnish an authenticated original or certified copy of the award and of the arbitration agreement (together with necessary translations) within three years after the award." *Id.*

The FAA "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995) (citing *Allied-Bruce Terminix Cos. v. Dobson*, ___ U.S. ___, 115 S.Ct. 834, 837-39 (1995); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Chapter 2 of the FAA, 9 U.S.C. §§ 201-208, implements the New York Convention and "controls arbitration disputes in the international context." *Id.* Chapter 2 "mandates that any commercial arbitral agreement, unless it is between two United States citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states, falls under the Convention." *Id.* at 689 (citing 9 U.S.C. § 202). "Chapter 2 also stipulates that '[a]n action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.'" *Id.* (citing 9 U.S.C. § 203).

Although Hospira is a United States citizen, Therabel is not. Furthermore, the relation between Hospira and Therabel is commercial. *See id.* at 689. Thus, any alleged arbitration agreement between Hospira and Therabel would fall under the New York Convention and a suit seeking to enforce such an arbitration agreement would be deemed to arise under the laws and treaties of the United States.

In this case, Hospira's complaint anticipates a suit by Therabel, brought pursuant to Chapter 2 of the FAA, to compel Hospira into arbitration before the ICC in accordance with the terms of the Arbitration Clause in the License Agreement. (*See* R. 1, Ex. A, Tab 1, License Agreement § 11.1.) Section 208 of the FAA "indicates that 'Chapter 1 applies to actions and proceedings brought under [Chapter 2] to the extent that [Chapter 1] is not in conflict with [Chapter 2] or the Convention as ratified by the United States." *Id.* at 689.

> As pertinent here, Chapter 1 of the FAA provides that
>
> A party aggrieved by the alleged failure, neglect, or refusal of another party to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4.

The Supreme Court has interpreted the "save for" clause of § 4 of the FAA to confine "federal courts to the jurisdiction they would have 'save for [the arbitration] agreement.'" *Vaden v. Discover Bank*, 556 U.S. 49, 66 (2009). The Supreme Court has thus "read § 4 to convey that a party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court.'" *Id.*

Again, § 208 requires the incorporation of Chapter 1 provisions to the extent they do not conflict with Chapter 2 or the Convention. However, "the jurisdictional restrictions of § 4 appear to conflict with jurisdictional grants of §§ 202 and 203 in international commercial

arbitration disputes." *Jain*, 51 F.3d at 691. Thus, while that portion of § 4 that allows a district court to compel arbitration in its own district applies to an action under Chapter 2 by virtue of § 208, its jurisdictional limits do not apply. *Id.* Chapter 2 would confer federal-question jurisdiction over Therabel's anticipated claims to compel Hospira into arbitration at the ICC, 9 U.S.C. § 203, while Chapter 1 would confer the ability to compel arbitration, should the Court determine that a valid agreement to arbitrate exists, 9 U.S.C. § 4. Accordingly, Therabel's presumed complaint to compel Hospira to arbitrate would, on its face, include an action arising under federal law. Because federal question jurisdiction would exist over Therabel's anticipated claims, the Court finds that it has subject-matter jurisdiction over Hospira's action for a declaratory judgment.

### B.      Diversity jurisdiction

Hospira also alleges that the Court has subject-matter jurisdiction over this action subject to the Court's grant of diversity jurisdiction pursuant to 28 U.S.C. § 1332, as this suit is between a citizen of Illinois and a citizen of a foreign state, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest or costs of suit. (R. 1, Compl. ¶ 8.) According to Hospira, Therabel seeks damages of at least $19 million in the Request for Arbitration that it initiated against Hospira and Javelin. (*Id.* ¶ 29.) Therabel has not contested Hospira's jurisdictional allegations. (*See* R. 24, Def.'s Resp.) Where jurisdictional allegations are not contested, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) (vacating judgment of dismissal and remanding with instructions to resolve the dispute on the merits where none of the plaintiff's

jurisdictional allegations was contested.)  Thus, the Court also has diversity jurisdiction over

Hospira's declaratory judgment action.

Having determined that the Court has subject-matter jurisdiction over Hospira's action

for a declaratory judgment, the Court now turns to the merits of the dispute.

## II. Whether Hospira is entitled to a declaratory judgment that it is not bound to arbitrate

Hospira seeks a declaration that it is not bound to arbitrate with Therabel.  (R. 1, Compl.

¶¶ 34, 35A.)  Hospira argues that it cannot be compelled to arbitrate with Therabel because it is

not a party to the License Agreement that gives rise to the ICC arbitration.  (R. 8, Pl.'s Mem. at

6-9.)  Specifically, Hospira contends that "there is no question that Hospira did not sign the

Javelin/Therabel License Agreement, and that there exists no other agreement between Hospira

and Therabel to arbitrate any dispute." (*Id.* at 9.)

### A. Standard for adjudicating an action for a declaratory judgment

Subject to certain exceptions that do not apply here, the Declaratory Judgment Act

provides, in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United
> States, upon the filing of an appropriate pleading, *may* declare the rights and other
> legal relations of any interested party seeking such declaration, whether or not
> further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis supplied).  The Declaratory Judgment Act implicates both

constitutional and prudential concerns.

First, a suit seeking declaratory relief must present an actual "Case" or "Controversy"

within the meaning of Article III, Section 2 of the United States Constitution. *See Aetna Life Ins.

Co. of Hartford Conn v. Haworth*, 300 U.S. 227, 239-40 (1937); *MedImmune, Inc. v. Genentech,

Inc.*, 549 U.S. 118, 127 (2007); *Nationwide Ins.*, 52 F.3d 689 at 692 (noting that the Act "does

not dispense with the Article III case or controversy requirement"). A suit presents a "case or controversy," when the dispute "is definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins.*, 300 U.S. at 240-41 (citing *South Spring Gold Co. v. Amador Gold Co.*, 145 U.S. 300, 301 (1892); *Fairchild v. Hughes*, 258 U.S. 126, 129 (1922); *Mass. v. Mellon*, 262 U.S. 447, 487 (1923)). "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* The Supreme Court has recognized that "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Nevertheless, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 273. The party seeking the declaratory judgment bears "the burden of establishing the existence of an actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) (citing *Aetna Life Ins.*, 300 U.S. at 240–241). Here, it is obvious that a dispute exists between Hospira and Therabel. The dispute centers on whether Hospira must submit itself to arbitration before the ICC and relates to the legal rights and obligations that arise from the Arbitration Clause. Further, the dispute is definite and concrete, and not merely hypothetical, as Therabel has already initiated ICC arbitration proceedings against Hospira. The parties' dispute does not call "for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Aetna Life Ins. Co.*, 300 U.S. at 242.

Second, even if an action for a declaratory judgment presents "an actual controversy" sufficient to pass constitutional muster, "a court may refuse to grant declaratory relief for prudential reasons." *Alcan Aluminium Ltd. v. Dep't of Revenue of State of Or.*, 724 F.2d 1294, 1298 (7th Cir. 1984) (citing *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1217 (7th Cir. 1980)). The Act is an authorization, not a command; while it gives "the federal courts competence to make a declaration of rights; it [does] not impose a duty to do so." *Pub. Affairs Assocs. v. Rickover*, 369 U.S. 111, 112 (1962) (*per curiam*); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.") "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 at 289.

The Seventh Circuit has cautioned that a "[d]eclaratory judgment should not be granted to try particular issues without settling the entire controversy, or to interfere with an action already instituted." *Sears, Roebuck & Co. v. Am. Mut. Liab. Ins. Co.*, 372 F.2d 435, 438 (7th Cir. 1967) (citing *Aetna Casualty & Surety Co. v. Quarks*, 92 F.2d 321, 325 (4th Cir. 1937); *Yellow Cab Co. v. City of Chi.*, 186 F.2d 946, 951 (7th Cir. 1951)); *see also ARW Exploration Corp. v. Aguirre*, 947 F.2d 450, 454 (10th Cir. 1991) ("A court in the exercise of its discretion should declare the parties' rights and obligations when the judgment will (1) clarify or settle the legal relations in issue and (2) terminate or afford relief from the uncertainty giving rise to the proceeding.") (citing *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989)). If a declaratory judgment will clarify and settle the legal relations at issue and afford parties relief from insecurity and uncertainty, the action for such judgment should generally be adjudicated.

*NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994). Here, the Court must determine whether Hospira is bound by the Arbitration Clause in order to discern whether Hospira's requested declaration will clarify the legal relations and provide relief from insecurity and uncertainty.

### B.    Validity of the Arbitration Clause

The FAA "creates a strong presumption in favor of arbitration, especially in international commercial agreements." *Jain*, 51 F.3d at 688 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 638-40 (1985); *Scherk v. Alberto Culver Co.*, 417 U.S. 506, 519-20 (1974)). As discussed above, the FAA "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Id.* at 688. Under § 4 of the FAA, federal district courts may compel arbitration and stay proceedings when there is: (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to comply with the arbitration agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Arbitration is a matter of contract, and parties may only be compelled to arbitrate issues they have agreed to arbitrate. *AT & T Techs., Inc.*, 475 U.S. at 648. Once the Court is satisfied that the parties agreed to arbitrate, it must promptly compel arbitration. 9 U.S.C. § 4.

Here, Hospira argues that it is not a party to any arbitration agreement that would require it to arbitrate before the ICC. (R. 1, Compl. ¶ 33.) While acknowledging that Hospira is not a signatory to the Arbitration Clause, Therabel contends that Hospira is still bound to the agreement to arbitrate pursuant to the doctrines of assumption and equitable estoppel. (R. 24, Def.'s Mem. at 5.) Neither Hospira, (R. 8, Pl.'s Mem. at 3-4), nor Therabel dispute the validity of the written arbitration agreement, (*See* R. 42, Pl.'s Reply at 2) ("Because Hospira is a non-

18

signatory to the License Agreement, Therabel can only force Hospira to arbitrate if it can show that one of the five exceptions applies to the general rule that non-signatories cannot be compelled to participate in an arbitration they never consented to."). Accordingly, the Court will assume without deciding that the Arbitration Clause is valid and enforceable, and will focus its inquiry on whether Hospira is bound by the Arbitration Clause.

### C.     Whether a non-signatory may be bound by an arbitration agreement

When determining whether parties are bound by an agreement to arbitrate, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "State law, therefore, is applicable to determine which contracts are binding under § 2 and enforceable under § 3 *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009) (holding that a non-signatory could invoke the FAA if the relevant state contract law allowed him to enforce the arbitration agreement) (quoting *Perry v. Thomas*, 482 U.S. 483, 493, n.9 (1987) (internal citations and quotation marks omitted). Here, the Arbitration Clause calls for the interpretation and construction of the License Agreement to be governed by New York law, (R. 1, Compl., Ex. A, Tab 1, License Agreement § 11.1), while the Merger Agreement states that "[a]ll disputes, claims or controversies arising out of or relating to this Agreement . . . or the transactions contemplated hereby shall be governed by and construed in accordance with the Laws of the State of Delaware," (R. 1, Compl., Ex. A, Tab 3, Merger Agreement § 11.08(a)). Because Therabel seeks to utilize Hospira's legal relationship with Javelin as a basis for compelling Hospira into arbitration, the issue at hand is whether Hospira assumed the duty to arbitrate according to the License Agreement's arbitration clause when it executed the Merger Agreement. *See Trippe*

*Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (Alito, J.). Accordingly, the law

that governs the Merger Agreement, Delaware law, governs the Court's analysis.

As a general rule, a party that has not signed an arbitration agreement is not bound by it,

and therefore cannot be compelled to arbitrate. *Grundstad v. Ritt*, 106 F.3d 201, 204 (7th Cir.

1997); *see also United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582

(1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to

arbitration any dispute which he has not agreed so to submit."). Courts enforce arbitration

agreements against non-signatories through a limited set of common law doctrines: (1)

assumption; (2) agency; (3) equitable estoppel; (4) veil piercing; and (5) incorporation by

reference. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Trippe Mfg.*, 401 F.3d at

532 (citing *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d

Cir. 2001)). Therabel argues that two of these doctrines apply here to bind Hospira to the

Arbitration Clause—assumption and equitable estoppel. (R. 24, Def.'s Mem. at 5.) The Court

addresses each in turn.

### 1. The doctrine of assumption

Therabel argues that pursuant to the doctrine of assumption "Hospira has taken over

Javelin's operations and conducted itself as the licensor to the License Agreement, and should

thus be bound by the agreement." (R. 24, Def.'s Resp. at 6.) Specifically, Therabel points to

Hospira's participation in the development of Dyloject and failure to correct Therabel's

assertions that Hospira was the licensor of the drug as indicia of Hospira's assumption. (*Id.* at 7.)

Therabel misconstrues the law of the doctrine of assumption.

A non-signatory "may be bound by an arbitration clause if its subsequent conduct

indicates that *it is assuming the obligation to arbitrate*." *Invista S.A.R.L. v. Rhodia, S.A.*, 625

F.3d 75, 85 (3d Cir. 2010) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995)) (emphasis supplied) (internal quotation marks omitted). In *Thomson*, the declaratory judgment plaintiff did not "manifest an intention to be bound" by the arbitration clause. *Thomson-CSF, S.A.*, 64 F.3d at 777. The Second Circuit found especially significant the fact that the non-signatory "explicitly disavowed any obligations arising out of the [agreement] and filed this action seeking a declaration of non-liability under the Agreement." 643 F.3d at 777. Accordingly, the court concluded that it could not "be said that [the non-signatory] assumed the obligation to arbitrate." Similarly here, although Therabel has alleged facts that purport to demonstrate that Hospira has assumed the License Agreement, (R. 24, Def.'s Mem. at 7), it does not allege any conduct that suggests that Hospira manifested an intention to be bound by the Arbitration Clause. To the contrary, like the non-signatory in *Thomson*, Hospira has expressly objected to arbitration and has sought a declaration from this Court that it has not assumed the Arbitration Clause. (R. 24, Ex. A, D'Souza Decl. ¶ 18; R. 1, Compl. ¶¶ 33-34.)

The Court notes that Delaware corporate law provides that in the case of a merger, the surviving corporation must assume the liabilities and duties of the constituent corporation. Del. Code Ann. tit. 8, § 259(a). That principle is echoed in the Merger Agreement, which reiterates that Javelin——the surviving corporation——retains its debts, liabilities, and duties and assumes all the debts, liabilities, and duties of Discus. (R. 1, Compl., Ex. A, Tab 3, Merger Agreement § 3.01.) It is clear from the Merger Agreement that Javelin remains an independent legal entity, a wholly-owned subsidiary of Hospira, and is still bound by the License Agreement to Therabel. (*See also* R. 42, Ex. A, D'Souza Decl. ¶¶ 9-12; R. 42, Ex. B, Muellemann Decl. ¶ 7.) That Javelin maintains a legal identity distinguishes the instant case from the only case Therabel cites to support its contention that Hospira assumed the Arbitration Clause. In *Fyrnetics (Hong Kong)*

*Ltd. v. Quantum Group, Inc.*, the Seventh Circuit held that after a merger, the legal successor to a signatory to a license agreement was bound by the arbitration clause in the agreement. 293 F.3d 1023, 1029 (7th Cir. 2002). *Fyrnetics* is distinguishable, however, because the signatory in *Fyrnetics* dissolved after it merged with its legal successor. *Id.* Here, Therabel has presented no evidence that Javelin, the signatory of the License Agreement, has dissolved since its merger with Discus. In fact, Javelin has maintained its separate legal identity as a subsidiary of Hospira. Additionally, the legal successor in *Fyrnetics* sued the other signatory to the license agreement therein at issue for claims that arose under that agreement. *Id.* at 1030. Here, Hospira does not bring any claims that arise under the License Agreement it contends it has not assumed.

The facts on the record indicate that—far from assuming the Arbitration Clause— Hospira has sought to distance itself from the Arbitration Clause Therabel contends it has assumed. This Court cannot find that Hospira has assumed the obligation to arbitrate. *See Invista S.A.R.L.*, 625 F.3d at 85. Accordingly, Hospira is not bound to the Arbitration Clause by the doctrine of assumption.

### 2. The doctrine of equitable estoppel

Therabel claims that Hospira is also bound to the Arbitration Clause by the doctrine of equitable estoppel. (R. 24, Def.'s Resp. at 8-12.) In particular, Therabel contends that Hospira is estopped from refusing to arbitrate because "Hospira accepted the benefits of Therabel's performance under the License Agreement." (*Id.* at 8.) For example, Therabel alleges that Hospira "benefited from Therabel's contributions to Hospira's efforts to obtain approval from the Federal Drug Administration," and that "pursuant to the License Agreement, Therabel helped facilitate relationships between Hospira and third parties." (*Id.* at 9.) Hospira argues that the

benefits Therabel identifies "flow first to Javelin," and that Hospira is only an indirect beneficiary as a parent corporation. (R. 42, Pl.'s Reply at 10.)

The theory behind binding non-signatories to an agreement through equitable estoppel is to prevent a non-signatory to a contract from embracing the contract, and then repudiating the portions of the contract that are undesirable. *Capital Grp. Companies, Inc. v. Armour*, No. CIV. A. 422-N, 2004 WL 2521295, at *6 (Del. Ch. Oct. 29, 2004) (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999)). The principle of equitable estoppel binds a non-signatory to an arbitration agreement when it has derived direct benefit from the agreement. *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 432 (Del. Ch. 2007) (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 778-79 (2d Cir. 1995)). The benefit must be *direct*; "indirect benefit under a contract is an insufficient basis on which to invoke an equitable estoppel theory to bind a non-signatory to an arbitration clause of a contract." *Id.* at 432-33. "A non-signatory to a contract will be estopped from arguing that a dispute-resolution provision does not apply when the non-signatory 'consistently maintain[s] that other provisions of the same contract should be enforced to benefit him.'" *Aveta Inc. v. Cavallieri*, 23 A.3d 157, 182 (Del. Ch. 2010) (quoting *E.I. DuPont de Nemours & Co.*, 269 F.3d at 200). Thus to prevail on its estoppel theory, Therabel must prove that Hospira received a direct benefit from the License Agreement. *See Nat'l Fire Ins. Co. of Hartford v. E. Shore Labs., Inc.*, 301 A.2d 526, 529 (Del. Super. 1973) ("The party asserting an estoppel has the burden of proving it by clear and convincing proof.").

Therabel alleges that Hospira gained direct benefits from the License Agreement, but Therabel fails to meet its burden of proof. The determination of whether a party is equitably

estopped is fact-specific and is not to be made based on inferences. *Dervaes v. H.W. Booker Constr. Co.*, No. 285 CIV.A. 1977, 1980 WL 333053, at *10 (Del. Super. May 28, 1980); *Empl'rs' Liab. Assur. Corp. v. Madric*, 183 A.2d 182, 188 (Del. 1962) ("An estoppel may not rest upon an inference that is merely one of several possible inferences."). It is unclear from Therabel's memorandum whether the benefits Therabel alleges Hospira received from the License Agreement are direct such that equitable estoppel is appropriate to bind Hospira to the Arbitration Clause. (*See* R. 24, Def.'s Mem. at 9.) Although Therabel stated that it was prepared to submit documents to the Court that would support its allegations, (*id.* at 2 n.4), it failed to do so. Hospira argues that the only benefits it receives from the License Agreement are indirect and flow to Hospira through its subsidiary, Javelin, who is the legal holder of all rights in Dyloject and the beneficiary of the License Agreement with Therabel. (R. 42, Pl.'s Reply at 10; R. 42, Ex. A, D'Souza Decl. ¶ 12.) Hospira has introduced evidence indicating, for example, that any benefits from FDA approval would belong to Javelin as the applicant to the FDA. (R. 42, Ex. A, D'Souza Decl. ¶¶ 16, 17.) In light of the record before the Court, the Court could only find that Hospira is a *direct* beneficiary of the License Agreement by relying solely on inferences and unsupported allegations. Accordingly, Therabel has not sufficiently demonstrated that the theory of equitable estoppel binds Hospira to the Arbitration Clause. *See NAMA Holdings*, 922 A.2d at 432-33; *Madric*, 183 A.2d at 188.

### D.    The declaratory judgment

Therabel has failed to show that Hospira, a non-signatory to the License Agreement, is bound to the Arbitration Clause within that Agreement by virtue of any of the circumstances in which courts may find that a non-signatory is bound to a valid arbitration agreement. Therefore,

Hospira is entitled to a declaratory judgment, pursuant to the Declaratory Judgment Act, 28

U.S.C. § 2201 *et seq.* and Rule 57 of the Federal Rules of Civil Procedure, stating that:

> Hospira is not bound by the Arbitration Clause in the License Agreement and therefore does not have an agreement to arbitrate with Therabel. Consequently, Hospira is not bound to arbitrate with Therabel before the ICC in Geneva, Switzerland.

Thus, Hospira has prevailed on its underlying claim under the Declaratory Judgment Act, and the

Court therefore turns to consider whether Hospira is likewise entitled to injunctive relief.

### III.    Whether Hospira is entitled to a permanent injunction enjoining Therabel from forcing Hospira into arbitration at the ICC

In addition to a declaratory judgment, Hospira also seeks an injunction enjoining

Therabel from proceeding with the ICC arbitration against it. (R. 1, Compl. ¶¶ 1, 5, 34.)  In its

prayer for relief, Hospira seeks both preliminary and permanent injunctive relief.  (*Id.* ¶ 35B.)

Although Hospira has only moved for a preliminary injunction, (R. 7, Pl.'s Mot.), the Court, in

the exercise of its discretion, consolidated the hearing for a preliminary and permanent injunction

into one hearing.  (R. 14, Min. Entry.)  *Am. Train Dispatchers Dep't of Int'l Bros. of Locomotive

Eng'rs v. Fort Smith R. Co.*, 121 F.3d 267, 269-70 (7th Cir. 1997) ("Whether or not to

consolidate the hearing [on a preliminary injunction] with the trial is within the district court's

discretion.") (citing *Paris v. U.S. Dep't of Hous. & Urban Dev.*, 713 F.2d 1341, 1345 (7th Cir.

1983)).  Under Federal Rule of Civil Procedure 65(a)(2), a district court may consolidate the

hearing for a preliminary injunction with the trial on the merits "[b]efore or after beginning the

hearing on a motion for a preliminary injunction."  Fed. R. Civ. P. 65(a)(2); *see also Am. Train

Dispatchers*, 121 F.3d at 270 (affirming district court's decision to consolidate the hearing on the

preliminary injunction and the trial on the permanent injunction).  Prior to such consolidation,

the Court "must provide 'clear and unambiguous notice . . . before the hearing commences or at a

time which will still afford the parties a full opportunity to present their respective cases." *Am. Train Dispatchers*, 121 F.3d at 270. Here, the Court provided the parties with the requisite notice, (R. 14, Min. Entry), and both parties understood that the hearing had been consolidated. (*See* R. 53, Hr'g Tr. 6, 9.) In addition, after the consolidation, the parties informed the Court that a hearing would not be necessary because the injunctive relief issues are purely legal in nature. (*See* R. 42, Pl.'s Reply at 1 n.1.) Thus, the Court proceeds to rule on the merits of the issue solely on the briefs that have been submitted. (*See* R. 57, Min. Entry.)

## A. Standard for injunctive relief

The Supreme Court has stated that injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). In deciding whether to grant injunctive relief, a court must consider four traditional criteria: "(1) whether the plaintiff has a reasonable likelihood of success on the merits; (2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; and (4) whether the granting of the injunction will harm the public interest." *Plummer v. Am. Inst. of Certified Pub. Accountants*, 97 F.3d 220, 229 (7th Cir. 1996) (citing *N.L.R.B. v. Electro–Voice, Inc.*, 83 F.3d 1559, 1567 (7th Cir. 1996); *Faheem–El v. Klincar*, 841 F.2d 712, 716 (7th Cir. 1988)). "A permanent injunction, (as opposed to a preliminary injunction or a temporary restraining order) is not provisional in nature, but rather is a final judgment." *Plummer*, 97 F.3d at 229 (citing *Walgreen Co. v. Sara Creek Prop. Co.*, 966 F.2d 273, 275 (7th Cir. 1992)). "Thus, when the plaintiff is seeking a permanent injunction, the first of the four traditional factors is slightly

26

modified, for the issue is not whether the plaintiff has demonstrated a reasonable likelihood of success on the merits, but whether he has in fact succeeded on the merits. *See Amoco v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.") (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 392 (1981)); *accord Chathas v. Local 134 Int'l Bhd. of Elec. Workers*, 233 F.3d 508, 513 (7th Cir. 2000) ("the predicate for a permanent injunction would have to be that they had prevailed on the merits. . . . A plaintiff cannot obtain a permanent injunction merely on a showing that he is likely to win when and if the merits are adjudicated.") (citing *Camenisch*, 451 U.S. at 394-95; *Plummer*, 97 F.3d at 229; *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989)). Here, the Court has determined that Hospira is entitled to a judgment declaring that it is not bound to arbitrate with Therabel and has in fact succeeded on the merits. Having demonstrated success on the merits, the Court now turns to the remaining injunctive relief factors to assess whether Hospira is entitled to a permanent injunction barring Therabel from forcing it into arbitration.

### B. Adequate remedy at law

A plaintiff seeking a permanent injunction has the burden of showing "that damages are inadequate, not that the denial of the injunction will work irreparable harm." *Walgreen Co.*, 966 F.2d at 275. The Seventh Circuit has explained that in the injunction context, the term "irreparable" means "not rectifiable by the entry of a final judgment" and "[i]t has nothing to do with whether to grant a permanent injunction, which, in the usual case . . . is the final judgment." *Id.* (citing *Diginet, Inc. v. W. Union ATS, Inc.*, 958 F.2d 1388, 1393 (7th Cir. 1992); *Vogel v. Am. Soc'y of Appraisers*, 744 F.2d 598, 599 (7th Cir. 1984)). According to the Seventh Circuit,

irreparable injury is simply one basis for showing the inadequacy of the legal remedy. *Crane by Crane v. Ind. High Sch. Athletics Ass'n*, 975 F.2d 1315, 1326 (7th Cir. 1992). Therabel argues that Hospira has adequate remedies at law because it "has the option of seeking to enjoin Therabel in Belgium or raise an objection to jurisdiction in the context of the arbitration proceeding." (R. 24, Def.'s Mem. at 17.) As this Court has previously held in a case with similar factual circumstances, however, were Hospira forced to arbitrate the question of whether it is subject to arbitration before an arbitral board, it would not have an adequate remedy at law. *See Proshred Holdings Ltd. v. Conestoga Document*, No. 02 C 1551, 2002 WL 1067328, at *6 (N.D. Ill. May 28, 2002) (where wholly-owned subsidiary of plaintiff had entered into a License Agreement with defendants and the plaintiff was not a signatory to the license agreement, plaintiff established the inadequacy of any remedy at law if it were forced to arbitrate); *see also UBS Securities, LLC v. Voegeli*, 405 Fed. Appx. 550, 551 (Jan. 4, 2011) ("Being forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law") (citing *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003)). Because Hospira is not legally obligated to arbitrate Therabel's claims, and the lack of an injunction would result in Hospira effectively being required to do so, Hospira satisfies the lack of an adequate remedy at law factor.

Furthermore, a result that allowed the arbitrator to decide whether Hospira is subject to the Arbitration Clause would be contrary to Supreme Court precedent. The Supreme Court has made clear that it is the courts and not an arbitrator who decide gateway disputes such as arbitrability. *See Oxford Health Plans*, 569 U.S. __ , 133 S.Ct. 2064 (2013). Questions of arbitrabilty, "which 'include certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a

certain type of controversy'—are presumptively for courts to decide." *Id.* (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (plurality opinion)); *see also AT & T Techs., Inc.,* 475 U.S. at 649 ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

## C. The public interest

The public interest factor looks at "the effect that granting or denying the injunction will have on nonparties." *Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1121 (7th Cir. 1997) (citing *Grossbaum v. Ind'polis Marion Cnty. Building Auth.*, 100 F.3d 1287, 1292 (7th Cir. 1996)). Therabel argues that the public interest factor militates against the issuance of an injunction because public policy favors arbitrations and disfavors piecemeal litigation. (R. 24, Def.'s Resp. at 13-14.) As one court in this District has explained, however, "[w]hile there is a public policy in favor of arbitration, that only applies when contracting parties have agreed to arbitrate." *Raytheon Eng'rs & Constructors, Inc. v. SMS Schloemann-Siemag Akiengesellschaft,* No. 99 C 7771, 2000 WL 420866, at *3 (N.D. Ill. Mar. 16, 2000). In this case, Hospira has *not* agreed to arbitrate with Therabel and the public policy favoring arbitration is therefore not applicable. While the granting of an injunction to Hospira will not have a direct effect on nonparties, the denial of an injunction will signal to nonparties who find themselves in a similar position as Hospira that their access to the courts is limited. As Judge Nordberg recognized, the public interest is not served by needlessly barring access to the courts. *Id.*

## D. Balance of hardships

Therabel argues that a balancing of the equities weighs against granting Hospira the injunctive relief it seeks because Hospira, owing to its size, is in a better position to arbitrate in

Geneva than Therabel is to litigate in the United States. (R. 24, Def.'s Mem. at 14.) This argument simply cannot withstand scrutiny. The balance of the harms in this case heavily favors the entry of a permanent injunction in favor of Hospira. As noted above, Hospira has achieved success on the merits of its underlying claim. Hospira has also demonstrated that it will not have an adequate remedy at law if forced to proceed with the ICC arbitration. The only harm to Therabel if the permanent injunction issues is that it will have to arbitrate with Javelin alone. For these reasons, the Court finds that Hospira is entitled to a permanent injunction enjoining Therabel from proceeding with the ICC arbitration against Hospira.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Hospira's motion for a preliminary injunction (R. 7) and concludes that Hospira is entitled to both a declaratory judgment and a permanent injunction.

The Court hereby declares, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that: Hospira is not bound by the Arbitration Clause in the License Agreement and therefore does not have an agreement to arbitrate with Therabel. Consequently, Hospira is not bound to arbitrate with Therabel before the ICC in Geneva, Switzerland.

In accordance with Federal Rule of Civil Procedure 65(d), the Court grants Hospira permanent injunctive relief and enjoins Therabel from proceeding with the ICC arbitration in Geneva, Switzerland against Hospira.

The Clerk of the Court is instructed to enter both the declaratory judgment and the permanent injunction in favor of Hospira, and to enter a final judgment in favor of Hospira.

ENTERED: _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: July 19, 2013**